### STATE HOSPITAL v. FOUNTAIN.

(Filed October 1, 1901.)

1. HOSPITALS AND ASYLUMS—*Indigent Insane—Compensation—States—Contracts—Officers.*

> The superintendent of a State hospital can not bind the State by agreeing not to charge an insane person able to pay expenses.

2. FORMER ADJUDICATION—*Appeal.*

> A question decided on a prior appeal is *res judicata* and will not be reviewed on a second appeal.

3. LIMITATIONS OF ACTIONS—*Hospitals and Asylums.*

> The superintendent of the State hospital can not recover compensation against guardian of insane person for the maintenance of his ward for more than three years preceding the bringing of the action.

4. LIMITATIONS OF ACTIONS—*Insane Persons—Guardian and Ward—Pleading.*

> Where an insane person is a party to an action, such insane person shall be deemed to have pleaded the statute of limitation.

ACTION by State Hospital at Raleigh against G. M. T. Fountain, guardian of Nancy L. Hargrove, heard by Judge *A. L. Coble,* at October Term, 1900, of the Superior Court of EDGECOMBE County. From a judgment for the plaintiff, the defendant appealed.

*Shepherd & Shepherd,* for the plaintiff.
*G. M. T. Fountain,* in propria persona.

COOK, J. This action was before us at Spring Term, 1901, as appears in 128 N. C., 23, wherein the Court only

passed upon the question of liability of defendant's ward, as it was agreed that the reasonable expenses of maintaining and treating her were $200 per year—leaving the computation of time for which she was liable to be adjudged by the Court below. And when it was again heard in the Superior Court of Edgecombe County, his Honor, upon motion of plaintiff, rendered judgment against defendant for the sum of $2,191.50, being the full amount claimed against defendant's ward from the time she first became a patient in plaintiff Hospital to the time of the hearing, except two intervals during which she was discharged. To which judgment defendant excepted and appealed.

The case on appeal shows that defendant's ward, Mrs. Nancy L. Hargrove, was an inmate of the Hospital from November 21, 1887, till the institution of this action, and still is (excepting from September 15, 1892, to January 31, 1895, and from February 8 till June 8, 1895); that at the time of her admission she was the wife of Gray L. Hargrove, a citizen worth at least $35,000, who died in 1894; that up to the time of her husband's death, said Nancy had no estate of her own, but from his estate received as distributee $2,-255.60 of personalty, and was endowed of 202 acres of land from which she received a rental of 7,200 pounds of lint cotton per annum for five years, and which thereafter did did not amount to more than 5,200 pounds of lint cotton per annum; and that afterwards (November 14, 1899) defendant collected, after long litigation and much expense, for his said ward as one of the heirs of J. J. Drew, deceased in the State of Alabama, the gross sum of $3,240.

Defendant contends, first, that his ward's estate is not liable for any sum whatsoever for the reason that, upon his qualification as guardian, March 29, 1895, he applied to the Superintendent of the plaintiff to know if any charge was made for patients who were able to pay, and was informed

that no charge was made for any person, and thereupon his ward was allowed to remain in the plaintiff institution; second, that if her estate is liable at all, plaintiff can only recover for such liability as accrued within three years prior to the beginning of this action.

The first contention can not be sustained, as it is too well settled that its agents or officers can not bind the State by any contract they may make, when not so authorized to do—especially in violation of the express statute (Code, sec. 2278), which allows the admission into the institution of *others than indigent insane persons upon payment of proper compensation,* and for the further reason that that question was adjudicated in the former decision (128 N. C., 23), and can not now be reviewed in this appeal.

We think the second contention is well founded and must be sustained. In no event could her estate have been liable during the lifetime of her husband, for it appears that he was possessed of sufficient means to provide for himself and family, and no liability could have attached to her estate till after his death. But as he died more than three years prior to the institution of this action, and the Statute of Limitations is interposed by law, that fact is not material in this decision.

It is provided by Acts 1889, Chap. 89, that "On the trial of any action or special proceeding, to which an insane person has been made a party, such insane person shall be deemed to have pleaded specially any defense, and shall have on the trial the benefit of any defense, whether pleaded or not, that might have been made for him by his guardian or attorney under the provisions of Title Three of The Code of Civil Procedure, section one hundred and thirty-six to section one hundred and seventy-six of The Code of North Carolina, both inclusive." By which statute the plea of the Statute of Limitations is specially interposed and pleaded

in behalf of the defendant, against which the State can not avail itself on account of its sovereignty, since by section 159 of The Code it has prescribed that "the limitations prescribed in this chapter shall apply to civil actions brought in the name of the State, or for its benefit, in the same manner as to actions by and for the benefit of private parties."

His Honor erred in rendering judgment for a sum in excess of the liability incurred within three years next preceding the institution of this action.

As the exact amount for which her estate is liable is not ascertained, this action is remanded to the Superior Court for the same to be inquired into and determined according to the practice of the Court and the due course of law.

There is Error.